# ANA MARIA HERNANDEZ ET AL.

*v.*

# J. OCHOA Y HERMANO.

Equity, No. 586.

1. The court has jurisdiction of a suit against a partnership, sued as such, when all the partners are Spanish subjects.
2. Complainants, who are not in possession of the land sued for, may maintain a bill in equity to annul a "dominio" title alleged to have been obtained by fraud of which defendants had notice, and to recover the land.
3. The person claiming under a "dominio" title has the legal title to the land in question.

Opinion filed December 26, 1908.

*Mr. Henry F. Hord* and *Mr. Joseph Anderson, Jr.,* attorneys for complainants.

*Mr. T. D. Mott, Jr.,* attorney for defendants, Ochoa y Hermano.

RODEY, Judge, delivered the following opinion:

The issue to be decided here is very important. The action was first brought at law, and after issue joined and the case had been called for trial, plaintiffs therein, on May 1, 1908, took a nonsuit and thereafter brought the present action.

Hernandez v. J. Ochoa y Hermano.

It is a bill in equity praying that complainants be decreed to be the owners of 106 cuerdas of land situated in the barrio of Nuevo, in the jurisdiction of Naranjito, Porto Rico. In substance, they allege that they inherited this land from their paternal grandfather through their father, both of whom owned, possessed, and occupied it successively for many years. That while complainants were yet infants, and they, with their widowed mother, were in possession of, and living upon, the premises, their maternal grandfather, who was also living thereon with them, and administering the said estate for them, fraudulently entered into a conspiracy with one of. the respondents, and secured a "posesorio," and later, while they were still minors, a "dominio," ownership or title in his own name to said land, and procured the inscription or recording of each of the same in the proper registry of property, and thereafter transferred the land to such respondent, who, in turn, thereafter transferred it to the remaining respondents, but that the latter, and, in fact, all of the respondents, at all times, had full and complete knowledge of the rights of these present complainants, and knowingly and fraudulently entered into such conspiracy to so deprive them of their property, and did, in pursuance thereof, thus secure the legal title thereto and oust and eject complainants from the same, and have ever since deprived them of the possession, use, and enjoyment thereof.

Complainants also allege that they are brother and sister, and, practically speaking, have just come of age, and therefore bring their bill to assert their rights in the premises.

In substance, they pray that the property be held to be subject to. their interests, and that the respondents be obliged to discover all the applications, petitions, alleged titles, descrip-

IV. PORTO RICO—26.

Hernandez v. J. Ochoa y Hermano.

tions, rights, registrations, transfers, etc., by which they, the respondents, pretend to hold or have title to the property in question, and that each and all of the same be canceled of record and held for naught, and the complainants be fully vested with the complete legal title thereto; and that the same, by order of court, be inscribed in their names in the proper registry of property; and further, that respondents be obliged to account for the mesne profits of the said land since the fraudulent and wrongful taking of the same, as alleged, and that they have general relief in the premises.

The respondents demur to the bill on two grounds:

First, because it appears upon the face of the bill that the partnership of J. Ochoa y Hermano is sued as such partnership; and

Second, because it appears by the bill that complainants have a plain, adequate, and complete remedy at law in and concerning the matters set forth in the bill, and that therefore the cause of action is not within the jurisdiction of a court of equity.

We have heretofore decided the first ground of demurrer against the view taken by respondents here. See Santana v. Marquez, 2 Porto Rico Fed. Rep. 271, where we held that "the diversity of citizenship necessary to give the court jurisdiction exists in a suit by a citizen of Porto Rico against a partnership organized under the laws of Porto Rico whose members are citizens of Spain."

The amended bill, as filed on November 11, 1908, in this cause, describes each of the respondents as subjects of the King of Spain and resident in Porto Rico. This disposes of the first ground of demurrer.

Hernandez v. J. Ochoa y Hermano.

The second ground of demurrer is the important one; under it the question is fairly presented whether or not a defendant in possession of land in Porto Rico, to which he has an inscribed title, can be deprived thereof by a court of equity, and thus denied his constitutional right of a trial by jury. The question is also presented whether or not, in this court, a complainant in equity, not being in possession of the land he sues for, can maintain such action at all.

After a somewhat extended though hasty examination of the law, we are inclined to the view that, at least, in this court in Porto Rico, the doctrine pronounced by the Supreme Court of the United States in Whitehead v. Shattuck, 138 U. S. 147, 34 L. ed. 873, 11 Sup. Ct. Rep. 276, must prevail; that is, that "when the right set up by the plaintiff is a title to real estate, and the remedy sought is its possession and enjoyment, that remedy should be sought at law, where both parties have a constitutional right to call for a jury."

We incline to this view because of the jurisdiction given the court by the Foraker law, being the same as that of circuit and district courts of the United States, in which, of course, a clear distinction is preserved between law and equity. Of course, we are not unmindful of the fact that Congress has not in terms extended the Constitution of the United States to Porto Rico, still we think, as we stated in Compagnie des Sucreries v. Ponce & G. R. Co. 2 Porto Rico Fed. Rep. 181, that "enough of it or its spirit follows the flag to prevent courts of the United States, having jurisdiction, wherever located, from permitting anybody's property to be taken without due process of law." Neither are we unmindful of the fact that the jury system has not been inaugurated in the insular courts of Porto Rico in

civil cases, and that therefore, were these complainants suing in those courts, they would not be entitled to a trial by jury. Such fact does not, in our opinion, authorize this court to deprive any person of a right to a jury trial if he is otherwise properly a litigant here.

It has been repeatedly held by the Supreme Court of the United States that "whilst it is true that alterations in the jurisdiction of the state courts cannot affect the equitable jurisdiction of the circuit courts of the United States, so long as the equitable rights themselves remain, yet, an enlargement of equitable rights may be administered by the circuit courts as well as by the courts of the state." Broderick's Will (Kieley v. McGlynn) 21 Wall. 520, 22 L. ed. 605; Holland v. Challen, 110 U. S. 24, 28 L. ed. 55, 3 Sup. Ct. Rep. 495; Smyth v. Ames, 169 U. S. 516, 42 L. ed. 838, 18 Sup. Ct. Rep. 418.

Some such enlargement of the rights of parties has, we think, been made in Porto Rico. Sec. 282 of the local Code of Civil Procedure provides that "an action may be brought by any person against another who claims an estate or interest in real property adverse to him, for the purpose of determining such adverse claim."

This language of the local Code is, word for word, the same as the amended Code of Arizona, with reference to which the Supreme Court of the United States, in Ely v. New Mexico & A. R. Co. 129 U. S. 293, 32 L. ed. 689, 9 Sup. Ct. Rep. 293, said that "the manifest intent of the statute, as thus amended, is that any person owning real property, whether in possession or not, in which any other person claims an adverse title or interest, may bring an action against him to determine the adverse claim and to quiet the plaintiff's title. It extends to

Hernandez v. J. Ochoa y Hermano.

cases in which the plaintiff is out of possession and the defendant is in possession, and in which, at common law, the plaintiff might have maintained ejectment."

It would seem that this announcement of the Supreme Court dispenses in Porto Rico, not only with the necessity of establishing title at law as the basis for a suit to quiet title, but that the plaintiff can bring such action whether he is in or out of possession of the land sued for. See, in this regard, Wehrman v. Conklin, 155 U. S. 315, 39 L. ed. 167, 15 Sup. Ct. Rep. 129, where Mr. Justice Brown indulges in a learned discussion regarding the effect of local ejectment statutes on the jurisdiction of Federal courts. We recommend a careful reading of this opinion to the bar of this court, as we think it throws more light upon our jurisdiction here regarding suits involving titles to land in the island and the proper line of demarcation between suits at law and suits in equity in that regard, than we have been able to gather from any other single source of information that has been called to our attention.

In the case at bar, complainants do not specifically allege that they have any inscribed title, and the inference is that they have not, although it is alleged that their paternal grandfather bought a large tract of land in his early life, which included the tract sued for. Therefore, if any inference is to be drawn from the bill as it stands, it is that the respondents are in possession of the land in controversy and have the only duly inscribed or recorded legal title thereto, but that, in truth and in justice, complainants are entitled to have this same title decreed to belong to them, or to have it canceled and their own equitable title substituted and inscribed on their account and in their names.

Hernandez v. J. Ochoa y Hermano.

In Smyth v. Ames, supra, it was held by the Supreme Court of the United States that the adequacy or inadequacy of a remedy at law and for the protection of one entitled, on any account, to invoke the powers of a Federal court, is not to be conclusively determined by the statutes of the particular state in which suit may be brought. Therefore, it seems to us that the question to be decided on this demurrer is: Have complainants a remedy at law here in this court? and, if they have not, then it would seem that this court of equity has jurisdiction. In other words, it is no ground of demurrer here that complainants, under the local statute, may have a complete remedy at law in the insular courts. If they are properly here, they must have such adequate remedy at law here, or else equity will grant them the remedy.

It might be as well to state here that conditions in Porto Rico with reference to land are so peculiar as that it is very difficult to apply the principles governing equity proceedings obtaining in courts of the United States thereto. In the more than two and a half years we have been on this bench, we have not noticed many grants from the Spanish Crown to private individuals for their land. Titles, certainly as to small holders in the country, appear to rest almost entirely on possession under the several local statutes of limitation, and where, perhaps, a grant from the Crown might be presumed. It appears that, in recent times, under the mortgage law, titles thus or otherwise held have been, in most instances, given weight:

First, by *ex parte* judicial proceedings known as "posesorio" titles, which we have held to be nothing more than notice to the world through a judicial certificate that the claimant is in adverse possession against all the world, of a particular tract of land. See Parés v. Reynes, 2 Porto Rico Fed. Rep. 403; and

Hernandez v. J. Ochoa y Hermano.

Second, after such "posesorio" title has existed for a sufficient length of time, by causing the same, through judicial proceedings, to ripen into a "dominio" title or certificate of ownership.

Apparently it sometimes happens that interested parties, well knowing the rights of others at the time, deceive the local courts through false descriptions, or in some other way, and fraudulently secure these "dominio" certificates of ownership or titles, and thus, after recording them, become possessed of what it seems to us must be held in Porto Rico to be the legal title to the land. Of course, when it happens that some other person is either in possession of the land, or in fact had an inscribed title thereto through all the years, while the other party was securing such "posesorio" and "dominio" certificates, the question involved is not so difficult, because these dominio certificates or titles, even under the mortgage law, at least, between the original parties, are never held to be good against a third party having a better title, and hence an action at law in this court is easily maintainable under the local Code, whether plaintiff is in or out of possession, because such plaintiff in fact has the legal title himself, and the apparently legal title of the defendant is a fraudulent one, which can be shown by the proofs, and the recording of the judgment in effect cancels it. In other classes of cases, such as the one at bar apparently is, where the only inscribed or legal title is the one in possession of respondents, which it is alleged they obtained by fraud, the question as to whether the claimants' remedy is at law or in equity is not so easy. However, in this sort of a case, when the respondents are in possession and have what must be held to be the legal title, and which, in equity and good conscience, they should

Hernandez v. J. Ochoa y Hermano.

be held to possess as trustees for the real owners, it seems to us that the remedy at law here is wholly inadequate, and a resort to equity is proper.

In such a case, it seems to us complainants cannot obtain adequate relief at law, because they must attack the title of respondents, and show the fraud that took place in and about obtaining it; and, further, when that is established, they must secure the cancelation of it as thus standing in the names of the respondents and secure its inscription in their own names. Then, too, as in this case, discovery to an extent must be had, as well as possession of the property; and we think a court of equity is the only proper place to accomplish all this without unnecessary circuity or a multiplicity of suits.

It has often been said, although we have never in practice seen the rule invoked, that if, in the trial of a suit in equity, an issue of fact arises the chancellor may send such issue to be determined by a jury. See Gormley v. Clark, 134 U. S. 338, 33 L. ed. 909, 10 Sup. Ct. Rep. 554. And so that might even be done in this sort of a case if it should prove necessary, which we think unlikely.

In Lockhart v. Leeds, 195 U. S. 427, 49 L. ed. 263, 25 Sup. Ct. Rep. 76, a case we have some knowledge of, because the property involved is located in our home county in New Mexico, the Supreme Court of the United States held that "where the defendants are in possession of a mine, having obtained title thereto from the government through fraud and connivance with one who was legally bound to take the title for the plaintiff, and the plaintiff cannot maintain ejectment, never having had the legal title, his remedy is by action in equity to have the defendants declared trustees *ex maleficio* for his benefit."

The doctrine thus announced is, we think, the remedy which · complainants here should avail themselves of; and perhaps they ought to amend their bill somewhat in order to comply with the rule thus laid down; at any rate, the facts of this case seem to warrant it.

We therefore hold, as we virtually previously held in Parés v. Reynes, supra, that, under the peculiar facts as alleged in the bill in this case, which involve fraud, discovery, and accounting, and the cancelation and inscription of instruments, a court of equity is the proper tribunal to afford them the relief they are entitled to, and in this court they have no proper, adequate, or complete remedy at law. Therefore the demurrer will be overruled, and it is so ordered.