Argued July 15, affirmed July 31, rehearing denied September 21, 1920.

# MANNING *v.* GREGOIRE.

(191 Pac. 657; 192 Pac. 406.)

**Adverse Possession—Clearing and Cultivating to Fence not True Boundary Gave Title in Fee.**

1. Where a fence was constructed through timber land as a boundary, a party clearing out the timber up to the fence, and continuously cultivating and maintaining possession for more than 10 years, acquired title in fee up to the fence, if the fence was not the true boundary.

**New Trial—Surprise not Ground for, in Absence of Request for Continuance.**

2. Where counsel was surprised by the admission of testimony, and such surprise overtook him at the moment the testimony was admitted, he should then have asked for a continuance of the case to enable him to take additional testimony on the subject.

**Adverse Possession—Letter Soliciting Quitclaim Deed no Recognition of Title.**

3. A letter, soliciting an adjoining land owner for a quitclaim deed for a tract claimed by the latter, which was merely an effort on the part of the writer to buy his peace, cannot be construed as an admission of title in the adjoining land owner.

## PETITION FOR REHEARING.

**Quieting Title—Plaintiff's Employee Could not Disturb Plaintiff's Possession.**

4. In an action to quiet title, wherein plaintiffs averred possession at beginning of suit, the court might quiet title, notwithstanding testimony of a witness that a tract of 141 acres, which he had purchased, was exclusive of the 8 acres in controversy and that as to the land in controversy he was the mere employee of plaintiff; his presence as such employee not disturbing plaintiffs' possession.

**Quieting Title—Plea Held Insufficient to Show Title Claimed by Defendant.**

5. In an action to quiet title, wherein plaintiff claimed to have been in continuous adverse possession of the land for 43 years, and wherein the defendant had the opportunity of showing that she held merely an estate in remainder not accruing until after the death of a certain person, her plea claiming some title and estate, but not asserting that her claim was well founded, was insufficient, as a party who would rely upon any particular estate must plead it, since the end and office of such an action is to call on defendant to assert whatever title he has so that it may be adjudicated.

Quieting Title—Distinction Between "Action to Quiet Title" and "Action to Remove Cloud" on Title Stated.

6. An "action to quiet title," wherein plaintiff asserts his own estate and declares generally that defendant claims some estate in the land, without defining it, and avers that the claim is without foundation, and calls on defendant to set forth the nature of his claim, so that it may be determined by decree, differs from a "suit to remove a cloud," in that plaintiff therein declares on his own title, and also avers the source and nature of defendant's claim, points out its defect, and prays that it may be declared void as a cloud on plaintiff's estate.

Equity—Denial of Rehearing Held not an Abuse of Discretion.

7. After a decree for plaintiffs in an action to quiet title, it was within the trial court's discretion to refuse to open the case and grant a further hearing merely to allow a third person to deny that he had employed one as attorney, though plaintiff had testified that he had had an interview with such attorney, whom he had addressed as the attorney for such other person.

From Marion: GEORGE G. BINGHAM, Judge.

Department 1.

The plaintiffs claim that they are now and for forty-three years last past have been the owners in fee simple of a tract of land in Marion County, and have been in the open, notorious, exclusive, and adverse possession of said premises for forty-three years next prior to the commencement of this suit; that the defendant claims some right, title and estate in the property, which claim is without right, and that she has no title whatsoever to the land or any part thereof. The prayer is for the decree usual in suits to quiet title.

The answer is as follows:

"Defendant, for her answer to plaintiffs' complaint on file herein, admits that she claims some right, title, and estate in the real property described in plaintiffs' complaint. Except as herein admitted, defendant denies each and every allegation set forth and contained in said complaint and the whole thereof."

The Circuit Court entered a decree to the effect that the plaintiffs are the owners in fee simple and entitled to the possession of the premises, and that their title should be quieted against the defendant and all parties claiming under her. The defendant appeals.                    AFFIRMED.

For appellant there was a brief with oral arguments by *Mr. S. M. Endicott* and *Mr. Walter C. Winslow.*

For respondents there was a brief over the name of *Messrs. McNary, McNary & Keyes,* with an oral argument by *Mr. John H. McNary.*

BURNETT, J.—1. The testimony is to the effect that the predecessors in title of the parties owned adjoining lands and some time prior to 1875 built a fence through the timber on the blazed line of an old survey, the north half of which fence was designated as belonging to the plaintiff's predecessor, and the south half to the defendant's predecessor. The plaintiffs acquired title to the property on the west side of the fence in 1875. They afterward cleared out the timber from nearly all of the tract in dispute, reduced the clearing to cultivation and have continuously maintained their possession up to the line of the fence, ever since they occupied it in 1875. The case is like that of *Krueger* v. *Brooks*, 94 Or. 119 (184 Pac. 285), in which Mr. Justice HARRIS, delivering the opinion, said:

"It is not necessary to state any additional facts or to relate any more of the evidence concerning the nature of the use which the plaintiff and his grantor made of the lands south of the fence; but it is

enough to say that, although the evidence in behalf
of the plaintiff was contradicted by witnesses for the
defendant, nevertheless, the record clearly shows
that the plaintiff and his grantor have been in actual
possession of and have used Tract D under claim of
ownership for considerably more than ten years.
The fact that all the land south of the fence was
cleared, and the fact that all of the land south of the
fence, which could be cultivated, was in truth culti-
vated up to the fence, plus the fact that the fence
was maintained as the dividing line for so many
years, is the strongest kind of evidence that Charles
Krueger, as well as his successor, the plaintiff,
claimed ownership in all the land south of the fence.
In brief, the evidence shows that the plaintiff is the
owner in fee simple of Tract D by force of a title
acquired by adverse possession: *Gist* v. *Doke,* 42 Or.
225 (70 Pac. 704); *Dunnigan* v. *Wood,* 58 Or. 119,
125 (112 Pac. 531); *Stout* v. *Michelbook,* 58 Or. 372
(114 Pac. 929)."

During the testimony of the plaintiff V. A. Man-
ning he stated that Michael Ferschweiler, a son of a
former owner on the east side of the disputed line,
contended about 1894 that the fence was not on the
right line, and that he caused the late Judge Bonham
as his representative to write to the witness, making
claim to the land. Manning says:

"We went to see Mr. Bonham; I explained to him
the condition the fence was made by himself and
Viessman as to the line. We cleared up to the fence
and held it to that time, and never was any com-
plaint. Mr. Ferschweiler built it as the line, and
Bonham says, 'If that is the condition of this line
fence,' he says, 'they can't be changed.' Then he
gave examples of his own experience in that line."

Mrs. Manning, the other plaintiff, testified con-
cerning the conversation with Judge Bonham thus:

"Well, I couldn't remember what year, but I went with my husband; we both went together and saw him, but I don't remember just exactly the year."

She said just her husband, Judge Bonham, and herself were present at the conversation. At that point the defendant's attorney objected to the testimony as incompetent, and counsel for the plaintiffs went no further with the matter.

2. After the case had been argued, submitted and decided against the defendant in the Circuit Court, her counsel made an affidavit to the effect that during the negotiations about taking the deposition of Ferschweiler no suggestion was made by plaintiffs' counsel about the evidence afterwards offered at the trial, by plaintiffs, pertaining to a conversation with Michael Ferschweiler, the son of the former owner, in Judge Bonham's office, nor was any mention made of retaining Judge Bonham or of the Judge Bonham incident; that since the trial he had consulted with Michael Ferschweiler by mail at some point in northern Canada, and that the latter had made an affidavit, denying that he had ever employed Judge Bonham, or that he had been present at or participated in any such conversation. Based upon this showing, the defendant applied for a reopening of the decree and for a new trial, but this was denied, and the refusal is made one of the specifications of error. We think the court did not abuse its discretion in refusing to reopen the case. In the first place, no objection was made to the testimony of V. A. Manning respecting his conversation with Judge Bonham, and, besides that, neither of the plaintiffs pretended that Michael Ferschweiler was

present at the conversation. Hence, the denial of the latter that he was a participant in that talk would be utterly immaterial. If the defendant's counsel was surprised, that surprise overtook him at the moment they testified, and he should then have asked for a continuance of the case, to enable him to take additional testimony on that subject. He cannot rightly go on and experiment with the result of the trial, and afterward expect the court to reopen the case for such trivial purposes.

3. The defendant counted strongly upon a letter written by the plaintiff husband to her, soliciting her to give him a quitclaim deed for the tract in dispute, as being a recognition of the defendant's title, and consequently a defeat of plaintiff's claim of adverse possession. The letter is clearly an effort of the writer to buy his peace, and cannot be justly construed as an admission of title in the defendant.

A careful reading of the testimony in the case has convinced us that the decision of the Circuit Court was right, and it is therefore affirmed.

AFFIRMED. REHEARING DENIED.

MCBRIDE, C. J., and BEAN and BENSON, JJ., concur.

Denied September 21, 1920.

## ON PETITION FOR REHEARING.

### (192 Pac. 406.)

*Mr. S. M. Endicott* and *Mr. Walter C. Winslow*, for the petition.

*Messrs. McNary, McNary & Keyes, contra.*

BURNETT, J.—Accompanied by a somewhat testy argument, the petition for rehearing filed by the defendant urges the following points upon our attention:

"The court erred in refusing to pass upon the questions presented by the brief and record as to the possession by respondents, and therefore the jurisdiction of the court.

"The court erred in failing to pass upon the question presented by the record in this case, and orally presented at the time of the argument, to the effect that whatever may be said of the holding by respondents it did not operate to bar the interest of appellant until the death of Barbara Ferschweiler in 1913, and therefore the statutory time has not elapsed to give respondents title by adverse possession.

"The court erred in its construction of the evidence as to the testimony of V. A. Manning regarding the incident in Judge Bonham's office.

"The court erred in holding that when the Judge Bonham incident was referred to appellant should have moved for a continuance, and because appellant did not so move she is now deprived of her right of a new trial by virtue of the newly discovered evidence.

"The court erred in holding that the letter was an effort of the writer to buy his peace."

4. By the first of these subdivisions we presume that counsel alludes to the relation which the witness Lewis bore to the land, implying that he was the purchaser in possession of the same adversely to the plaintiffs here, thus ousting the court of jurisdiction at the suit of plaintiffs; the land being in possession of another. It is true, as disclosed by the testimony of Mr. Lewis, that Mr. Manning sold to Lewis 141 acres; but he says that it was exclusive of the 8-acre tract in dispute. Speaking of this tract, the witness said:

"In the first place, when I bought the land, I was supposed to have possession of that piece of land and farm, the same as the other, until such time as he could give me a title to this land, and in the spring, when I went to plow it, Mr. Wilquet told me I had better not do it, that there would be trouble over it, and I just give it up; then Mr. Manning hired me to plow and sow it for him."

Lewis testifies that he put in crops on the 8-acre tract during year 1918 for Mr. Manning, that Manning plowed, part of it, and that the witness sowed it to wheat for him. He says that the work which he did upon the tract was paid for by Mr. Manning. This clearly shows that as to the 8-acre tract in controversy Lewis was the mere employee of Manning, and that his physical presence upon the land as such employee did not disturb or impair the possession of Manning. Thus the averment of the plaintiffs that they were in possession of the premises at the beginning of the suit is upheld, even by the testimony of Lewis, giving the court jurisdiction to quiet title.

5, 6. As to the contention in the second subdivision, it is a primary principle that, if a party would rely upon any particular estate in the land, he must plead it. Indeed, the very end and office of a suit to

97 Or.—26

quiet title is to call upon the defendant to assert whatever title he has, so that the same may be adjudicated. There is a difference between a suit to quiet title and one to remove a cloud. In the former, the plaintiff asserts his own estate, declaring generally that the defendant claims some interest in the land, without defining it, averring that the claim is without foundation, and calling upon the defendant, as in this instance, to "set forth herein the nature of her claim against the property so that it may be determined by a decree of the court." On the other hand, in a suit to remove a cloud, the plaintiff declares his own title, and in addition thereto avers the source and nature of the defendant's claim, points out its defect, and prays that it be declared void as a cloud upon the plaintiffs' estate. Given thus the opportunity of defining and asserting her right to the property in this suit to quiet title, and of combating the claim of the plaintiffs that they have been in continuous adverse possession of the land in question for 43 years, and especially showing that the defendant held merely an estate in remainder, which did not accrue to her until the death of Barbara Ferschweiler in 1913, the defendant contented herself with this answer:

"Admits that she claims some right, title, and estate in the real property described in plaintiffs' complaint. Except as herein admitted, defendant denies every allegation set forth and contained in plaintiffs' complaint and the whole thereof."

She does not even assert that her claim is well founded. On such pleadings we may well doubt if the proper decree would not have been one in favor of the plaintiffs on the pleading. But whatever relation the defendant may have had to Barbara Fersch-

weiler, and however her tenure of the land may be affected by the death of Barbara in 1913, it can have no effect in this case, because it was not pleaded. Assuredly the pleadings cannot be controlled or governed by what counsel may have discovered for the first time just prior to the argument in this court on appeal, as stated in the argument for rehearing.

7. The third and fourth subdivisions of the petition refer to the testimony of Manning, regarding the interview with Judge Bonham, who, according to Manning's testimony, had addressed him as the attorney for Michael Ferschweiler. The whole incident was immaterial. Even if Ferschweiler had been present and participated in the conversation, it would not have disturbed the possession of the plaintiffs, or altered the fact that they had been in actual occupancy of the land for the period mentioned. At best, it was within the discretion of the trial court to refuse to open the case and grant further hearing merely for the purpose of allowing Ferschweiler to deny that he had employed Judge Bonham to represent him. We cannot say that the court abused its discretion, especially as no application was made for further hearing until long after the decree of the trial court was rendered.

We are unable to agree with counsel as to the evidentiary effect of the letter of Manning to the defendant. It was plainly an effort to buy his peace and does not merit further discussion. The principles underlying the pleadings in suits to quiet title are elucidated in the various text-books and need not be further explained.

The petition for rehearing is denied.

AFFIRMED.   REHEARING DENIED.

McBRIDE, C. J., and BEAN and BENSON, JJ., concur.